# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JULIO C. MARQUEZ, ) | |
| AIS # 229709 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:13-cv-01714-RDP-JEO |
| ) | |
| WARDEN PRICE, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

The plaintiff, Julio C. Marquez, filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983, alleging rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at Donaldson Correctional Facility. (Doc. 16). The sole remaining claim is against defendant Raymond L. Gaines.[1] The plaintiff complains that during what was supposed to be a one-on-one fight with defendant Gaines, Gaines and another officer fought unfairly. (Doc. 16 at 6-8). The plaintiff seeks compensatory damages, transfer from Donaldson Correctional Facility, and the disciplinary action against him expunged from his record. (*Id*., at 4).

---

[1] All other defendants were dismissed by court order of August 27, 2015. (Doc. 22).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

After dismissal of all other defendants and claims under 28 U.S.C. § 1915A (doc. 22), the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to the remaining defendant and requesting that he file a special report addressing the factual allegations of the plaintiff's complaint. (Doc. 24). The defendant was advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, the plaintiff was advised that after he received a copy of the special report submitted by the defendant he should file counter affidavits if he wished to rebut the matters presented by the defendant in the special report. The plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendant's special report.

On November 25, 2015, defendant Raymond Gaines filed a special report with affidavits, medical records, and other evidence attached. (Doc. 32). The parties were notified that the court would construe the special report as motion for summary judgment and the plaintiff was informed that he would have an additional twenty days to respond to the motion for summary judgment, filing affidavits or other material if he so chose. (Doc. 33). The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On December 14, 2015, the plaintiff filed a response to the special report. (Doc. 35).

## II. Summary Judgment Standard

Because the special report of the defendant is being considered as a motion for summary judgment, the court must determine whether the moving party, the defendant, is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.* In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie

entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532. However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

## III. Summary Judgment Facts

Applying the above standards to the pleadings before the court, the following facts are undisputed or, if material and disputed, taken in a light most favorable to the plaintiff.

On August 25, 2013, the plaintiff was talking to other inmates through his cell door. (Doc. 16 at 5). Defendant Gaines spoke to the plaintiff, but the plaintiff ignored him. (*Id.*) This made Gaines angry and he said "everybody is a man behind them doors," so the plaintiff told him to open the door and Gaines said he was going to once the officers finished giving haircuts. (*Id.*) Gaines was the last officer in the block when the haircuts were finished, so the plaintiff beat on his door and asked Gaines "What's up?" (*Id.* at 5-6). Gaines walked towards his door so the plaintiff put on his pants and shoes and got ready. (*Id.* at 6).

According to Gaines, the facts preceding the incident at issue are quite different. Gaines asserts that, as the officers were giving haircuts, he was informed by another officer that the plaintiff was standing in his door masturbating. (Doc. 32-1 at 1-2). Gaines shut and locked the plaintiff's cell tray door, but soon after was notified that the plaintiff's tray door was again open with the plaintiff

continuing his prior actions.[2]  (*Id.* at 2).  Gaines again shut and locked the tray door.  (*Id.*)  Officer Campbell asked the plaintiff why he kept unlocking his tray door and the plaintiff responded with profanity.  (*Id.*)  The plaintiff then told Gaines to "Roll the door, I'll beat your ass."  (*Id.*)

Although the parties dispute the reason the fight began, they agree that they had a verbal dispute they decided to settle through a one-on-one fight.  (Doc. 16 at 6; doc. 26 at 1; doc. 32-1 at 2).  Gaines handed his stick and radio to Officer Campbell and Campbell instructed Officer Purifoy to "roll the door."  (Doc. 16 at 6-7; doc. 32-1 at 2).  Purifoy did not open the door, so the plaintiff told Gaines to go to the cube and get Purifoy to open his door.  (Doc. 16 at 6).  A little later, Gaines came back with Campbell, and the plaintiff asked Gaines why he brought a woman with him when they had agreed to a one-on-one fight.  (*Id.*)

Gaines and Campbell entered the cell.  (Doc. 16 at 7; doc. 32-1 at 2).  According to Gaines, he stepped in front of Campbell and the plaintiff swung, striking him in the face.  (Doc. 32-1 at 3).  A fist fight then ensued.  (*Id.*)  According to the plaintiff, Gaines swung at him first, striking him in the head.  (Doc. 16 at 7).  The plaintiff also asserts that as soon as Gaines had punched him,

---

[2] The plaintiff asserts that this incident never occurred.  (Doc. 35, at 1).  Moreover, he alleges that the cell tray doors only open and lock from the outside.  (*Id.*)

Campbell immediately grabbed him and held him down while Gaines continued to swing at him. (Doc. 16 at 7). Gaines rushed him and Campbell, causing the plaintiff to fall against "the rock,"[3] striking his ribs and spine. (Doc. 16 at 7). At this point the plaintiff was on the floor, with Officer Campbell holding him down, screaming for him to "chill" and telling defendant Gaines to get out of the cell.[4] (*Id*., at 7-8). Gaines continued to punch him in the head. (*Id.* at 8). When the plaintiff attempted to rise, Gaines hit him on the head with his stick. (*Id*.)

When Gaines left the cell, the plaintiff asked Campbell to take him to the infirmary for a body chart and report the incident to a supervisor, but she refused, stating the plaintiff needed to respect the "one on one." (Doc. 16 at 9). Because the plaintiff was not taken to the infirmary, he cut his arm with the metal part of a pencil and put blood on his cell window door to attract a supervisor. (*Id*. at 11). When officers came to his cell, the plaintiff told them what happened. (*Id*.) Although the plaintiff was accused of lying, he was taken to the infirmary. (*Id*.)

    A subsequent investigation into this incident found that

    all the officers involved were covering up the truth. Inmate Marquez did not harm his self (sic) but Officer Gaines and Officer Campbell entered Inmate Marquez cell without cause and Officer Gaines USED

---

[3] The undersigned believes the plaintiff means "rack" as a shorthand term for his bed frame.

[4] According to Gaines, Campbell got in between the plaintiff and Gaines, and instructed Gaines to exit the cell. (Doc. 32-1 at 3).

> FORCE on Inmate Marquez with no Justification. The force used on Inmate Marquez was unnecessary.

(Doc. 32-2 at 2). A body chart the day of the fight reflects bruising to the plaintiff's head, neck, left shoulder and chest.[5] (Doc. 32-2 at 6). The plaintiff also had superficial cuts to his left arm from where he cut himself. (Doc. 32-2 at 6).

Defendant Gaines was reprimanded, removed from the Mental Health and Segregation Units, and states he will not roll another door without following policy. (Doc. 32-1 at 3). The plaintiff was disciplined for intentionally creating a security, safety or health hazard. (Doc. 32-2 at 7, 9-11).

## IV. Discussion

A. *Eleventh Amendment Immunity*

To the extent that the plaintiff brings this action against defendant Gaines in his official capacity, Gaines is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59] (1996). Alabama has not waived its

---

[5] Both the body chart and the photographs taken of the plaintiff show a large round abrasion in the middle of the plaintiff's forehead. (Doc. 32-2 at 6, doc. 32-2 at 15).

> Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Because in his official capacity defendant Gaines is a state actor, and thus entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him, any such claim the plaintiff brings is due to be dismissed.

### B. Individual Capacity-Excessive Force

To establish a claim for excessive force, the test is not "whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Although the extent of any injury alone is not dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Whether the use of force is excessive and thus violates the inmate's right to be free from cruel and unusual punishment depends on whether the official's act "shocks the conscience." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). To evaluate whether actions shock the conscience, the court must consider the following factors: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors must be viewed with "a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Even so, in taking the evidence in the light most favorable to the plaintiff, each of these factors weighs in the plaintiff's favor.

The undisputed evidence is that, regardless of the origin of dispute, the plaintiff and Gaines engaged in a verbal altercation and agreed to a fight. (Doc. 16 at 6, doc. 32-1 at 2). Until Gaines ordered that the plaintiff's cell door be opened, no need for force existed.[6] Moreover, once Gaines entered the cell, and while the

---

[6] As noted above, the Investigation Report into the use of force found that Officer Gaines and Officer Campbell entered Inmate Marquez cell without cause

plaintiff was restrained by Campbell, Gaines continued to strike blows upon the plaintiff's head and ribs.  (Doc. 16 at 7-8).  The question concerning the relationship between the need for force and the amount used thus becomes whether a reasonable jury could find that the actions of Gaines, in engaging continuing to punch the plaintiff in the head and ribs, after Campbell had the plaintiff restrained, constituted more than the force made necessary by the situation.

As to the third *Whitley* factor, the extent of the plaintiff's injuries, the plaintiff suffered bruises and scrapes to multiple areas of his face, neck, torso and shoulders.  (Doc. 32-2 at 6).  He alleges he continues to suffer from head, neck and spine problems.  (Doc. 16 at 13).  The defendant argues that the force used was *de minimus*, and much lesser than force not found sufficient in other cases.  (Doc. 32 at 11).  However, the absence of a serious injury to plaintiff, although of evidentiary relevance, does not end the court's inquiry.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.  *See also Hudson,* 503 U.S. at 4 ("the use of excessive physical force against a prisoner may constitute cruel and unusual punishment

---

and Officer Gaines USED FORCE on Inmate Marquez with no Justification.  The force used on Inmate Marquez was unnecessary.

(Doc. 32-2 at 2).

[even] when the inmate does not suffer serious injury."); *Brooks v. Kyler*, 204 F.3d 102, 108 (3rd Cir. 2000) ("the absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force . . . ."  Otherwise, "a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible . . . injuries that were *de minimis*").

The cases cited by the defendant for the proposition that injuries must be "sufficiently serious" to survive summary judgment do not support his position. For example, in *Williams v. Cash,* 836 F.2d 1318 (11th Cir. 1986), the court did not find that the allegation of a broken elbow was insufficient, as Gaines asserts, but held that, "[b]ecause there is a genuine issue of material fact as to how Williams' elbow was broken, summary judgment was inappropriate." *Id*. at 1320. The case was reversed and remanded for trial. *Id*.  Similarly, in *Perry v. Thompson*, the Eleventh Circuit reversed the grant of summary judgment in favor of the defendants, holding that the pleadings filed created "a square, head-on dispute of material facts. 786 F.2d 1093, 1095 (11th Cir. 1986).[7]  Although the defendant also cites *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002), for the

---

[7] In *Perry*, the Eleventh Circuit noted that under the defendant's version of events, the force used was reasonable whereas under the plaintiff's version, it was not.  786 F.2d at 1093. The extent of the plaintiff's injuries was not mentioned by the court.  *Id*.

proposition that "even an officer acting with specific malevolent intent to cause harm must inflict more than *de minimis* injury to violate the Cruel and Unusual Punishment Clause of the Eighth Amendment" (doc. 32 at 13), the Court in *Johnson* actually stated:

> The same is true in this case where the subjective element of the constitutional violation is that the force was used and the injury inflicted not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm to the plaintiff. Acting with that specific malevolent intent to cause harm, at least where (as here) more than *de minimis* injury results, violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, and that was clearly established law at the time Breeden and Gomez entered Johnson's cell on August 22, 1995. *See Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986).

*Id.,* 280 F.3d at 1321.

The fourth and fifth factors also weigh in the plaintiff's favor.  The extent of the threat to the safety of staff and inmates, as reasonably perceived by a responsible official on the basis of facts known to him, was non-existent until defendant Gaines opened the plaintiff's cell door and entered the cell.  Even then, both Gaines and Campbell were in the cell with solely Gaines.  The plaintiff asserts that Gaines swung at him first.  (Doc. 16 at 7).  As to the fifth factor, Gaines made no effort to temper the severity of a forceful response.  In the light most favorable to the plaintiff, Gaines continued to hit and kick the plaintiff after he was restrained

by Campbell. When prison officials "continue to use substantial force against a prisoner who has clearly stopped resisting–whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated–that use of force is excessive." *Danley v. Allen,* 540 F.3d 1298, 1309 (11th Cir. 2008) *rev'd on other grounds, Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See also Skrtich v. Thorton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."). Under the facts alleged, a fact finder could reasonably conclude that Gaines used force "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21. Because a genuine issue of material fact remains as to the events which occurred inside the plaintiff's cell, the defendant's motion for summary judgment on this claim is due to be denied.

 C. *Qualified Immunity*

Having found a constitutional violation of the plaintiff's rights, the court must now consider whether the defense of qualified immunity assists the defendant. Qualified immunity ensures that, before an official is subjected to suit, he or she is on notice that the conduct in question is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Thus, qualified immunity shields public officials in their individual capacities from some lawsuits against them arising from torts committed

while they are performing a discretionary duty.  *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007).  Neither party disputes that Gaines's actions occurred while defendant Gaines was engaged in discretionary duties. Thus, the question becomes whether Gaines's actions violated a right that was clearly established at the time the incident occurred.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In the Eleventh Circuit, the defense of qualified immunity is not available where the plaintiff alleges excessive force in violation of the Eighth Amendment, because force used "maliciously and sadistically to cause harm" is clearly established as a violation of the Constitution.  *Johnson*, 280 F.3d at 1317.  The Eleventh Circuit has held:

> The question for qualified immunity analysis is whether, at the time of the incident, it was clearly established that it is unlawful to inflict a beating upon a prisoner in custody when he is incapacitated and no longer able to pose a threat to the guards' ability to maintain order, resist the guards' directions, or engage in disruptive behavior. We answer that question in the affirmative. By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated. *See Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir. 1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir. 1991); *Williams v. Cash–C.O.I.,* 836 F.2d 1318, 1320 (11th Cir. 1988); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

*Skrtich*, 280 F.3d at 1303.  *See also Council v. Sutton*, 366 F. App'x 31, 37 (11th Cir. 2010) (applying *Skrtich* to hold that "where a plaintiff alleges that the

defendants used excessive force maliciously and sadistically to cause harm, the right to be free from gratuitous force after a prisoner has been subdued is a clearly established constitutional right.").

Applying the foregoing to the present facts, even if Gaines had entered the plaintiff's cell for a valid reason, once Officer Campbell held down the plaintiff, every kick and punch Gaines applied was a gratuitous use of force. An internal inquiry found not only that Gaines entered the plaintiff's cell without cause, but also that Gaines's use of force on the plaintiff was unnecessary. (Doc. 32-2 at 2). This evidence, coupled with the plaintiff's allegations, is sufficient to find qualified immunity inapplicable to the facts.

## V.  Recommendation

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that defendant Gaines's motion for summary judgment (doc. 32) be **DENIED**.

## VI.  Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**

Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint must also be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  A copy of the objections must be served upon all other parties to the action.

On receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need

conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation on the plaintiff.

**DONE** this 29th day of January, 2016.

_/s/ John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge